In the Matter of ROBERT TUDMAN, an Inmate of Utica State Hospital.

FREDERICK MacCURDY, as Commissioner of Mental Hygiene of the State of New York, Petitioner; CLARA WILGUS, as Committee of Robert Tudman, Respondent.

County Court, Oneida County, January 21, 1944.

*Nathaniel L. Goldstein, Attorney-General (Frank H. Cronkhite* of counsel), for petitioner.

*Michael J. Larkin* for respondent.

HANAGAN, J. Frederick MacCurdy, the Commissioner of Mental Hygiene, the petitioner in the above proceeding, has made application for an order directing Clara Wilgus as committee of the person and property of the said Robert Tudman to remove the said Robert Tudman from the Utica State Hospital to a private licensed institution and to pay the costs thereof, and that the said committee be directed to pay to the Utica State Hospital the amount now due for the care, maintenance and medical attention of said Robert Tudman to the date of removal, or in the alternative that leave be granted the petitioner to commence an action against the said committee to recover the amount now due the Utica State Hospital and that the committee be directed to remove said patient to a private licensed institution, or in the additional alternative that the committee be directed to pay the Utica State Hospital the amount now due for the care of Robert Tudman and that Clara Wilgus as committee be directed to sign a special agreement with the

petitioner or the Utica State Hospital agreeing to pay the rates fixed by the Commissioner of Mental Hygiene to be charged for the future care, maintenance and medical attention as they accrue.

Robert Tudman was duly committed to the Utica State Hospital on June 24, 1940, by an order of the Oneida County Court and has continuously remained and still is an inmate of the Utica State Hospital. By an order of the Oneida County Court dated September 12, 1940, Ida M. Tudman and Clara Wilgus were duly appointed the committee of the person and property of Robert Tudman. The said Ida Tudman was declared an incompetent person on or about December 17, 1941, and Clara Wilgus was appointed as committee of the person and estate of the said Ida M. Tudman. The said Clara Wilgus is still acting as committee of the estate and person of the aforesaid incompetent person, Robert Tudman.

There is now in the estate of said Robert Tudman, the incompetent person, upward of thirty thousand dollars. On or about December 27, 1940, the Commissioner of Mental Hygiene established a charge of five dollars per day for the care, maintenance, custody and medical attention of said Robert Tudman from the date of his admission to the Utica State Hospital to and including July 31, 1943, and pursuant to this charge there was due and owing the Utica State Hospital the sum of $5,795 up to July 31, 1943. Payment of this sum has been duly demanded and it remains unpaid.

It is conceded that Robert Tudman, the said incompetent, is neither poor nor indigent within the provisions of the Mental Hygiene Law and that he is not a proper subject for hospitalization in a State hospital as a poor and indigent person. The said Clara Wilgus, the aforesaid committee of Robert Tudman, was requested to remove the incompetent to a duly licensed private institution by letter dated March 15, 1943.

The respondent, Clara Wilgus as committee, claims that the expenses and cost of caring for and treating said Robert Tudman, the incompetent, was not determined by the said Commissioner of Mental Hygiene as required by the provisions of subdivision 2 and subdivision 8 of section 24-a, of the Mental Hygiene Law. The said committee claims in her answering affidavit that the cost of the care and treatment of insane patients at the Utica State Hospital, including the said Robert Tudman, did not exceed the sum of two dollars per day, which sum of two dollars per day was fixed by the Commissioner as the cost of care and treatment of insane patients in said hospital including said Robert Tud-

man. The Commissioner of Mental Hygiene contends that he has complied with the provisions of the Mental Hygiene Law in fixing the rate per day for said incompetent.

The question presented here is the manner in which the Commissioner of Mental Hygiene shall determine the cost of care and maintenance of a patient who has been regularly committed to a State hospital and who has a committee and sufficient estate to pay for such cost of care and treatment.

Section 83 of the Mental Hygiene Law does not apply in this proceeding as the patient was not admitted under a special agreement; neither has there been such an agreement made between the Commissioner and the committee providing for maintenance costs at a specified rate as is provided for in subdivision 1 of section 24-a of the Mental Hygiene Law.

Prior to May 8, 1942, pursuant to the provisions of section 24-a, the Commissioner was empowered to fix the rate to be paid by the committee of the estate of an incompetent inmate when his estate was sufficient to pay the cost of his maintenance. Prior to the above date there was no provision in the above section of the said law directing the manner in which the Commissioner should determine the rate to be paid. By chapter 747 of the Laws of 1942, section 24-a of the Mental Hygiene Law was radically changed by amendment effective May 8, 1942. Subdivision 2 of section 24-a of said Law now provides: " The committee, guardian, or trustee of a trust fund established for the support of a patient or inmate, and the husband, wife, father, mother and children of a patient or inmate shall, if of sufficient ability, be jointly and severally liable and responsible for the cost of care and treatment of such patient or inmate." It is provided by subdivision 1 of the same section that " Unless an agreement is made between the commissioner and the party to be charged providing for the payment of maintenance costs at a specified rate, the rates to be charged for the care and treatment of such persons shall not be in excess of the cost of their care and treatment as determined by the commissioner pursuant to this section." The manner of determining the rate to be charged for the care and treatment mentioned in said subdivision 1 is set forth in subdivision 8 of section 24-a of said Law, which provides: " The commissioner, in determining the cost of care and treatment of any one patient, shall compute within three months subsequent to the beginning of each fiscal year the total direct and indirect costs to the state for the care and treatment of patients for the preceding fiscal year which total cost shall be divided by the average daily patient

population for that year of patients in all state institutions under the jurisdiction of the department of mental hygiene and the per capita cost arrived at shall be the cost of care and treatment of such patient. The rate computed under this section for the cost of care and treatment of a patient at any such state institution under the jurisdiction of the department of mental hygiene shall be effective as of October first and operative for the ensuing year." (Added by L. 1942, ch. 747, eff. May 8, 1942.)

There is nothing in the moving papers to show that the petitioner has complied with said subdivision 8 of section 24-a of said Law in determining the rate fixed by him and in determining the amount now due from the committee. The court cannot direct the committee to pay the amount now due under the circumstances presented here until there is proof that the Commissioner has complied with subdivision 8 of section 24-a of said Law. Until the dispute is settled, it would be unfair to disturb the patient by removal from the Utica State Hospital to a private institution. The petitioner should have permission to commence action to enforce the claim and obligation.

The petitioner's motion for an order granting leave to commence an action against the committee herein to recover the amount now due the Utica State Hospital, is granted. The other motions made herein by the petitioner are denied. No costs. Ordered accordingly.